1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| MARK FREGIA, | Case No.  1:21-cv-01068-JLT-BAM (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS GRANTING DEFENDANT SAVAGE'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| MIRANDA, *et al.*, | (ECF No. 75) |
| Defendants. | **FOURTEEN (14) DAY DEADLINE** |

## I.     Introduction

Plaintiff Mark Fregia ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  This action proceeds against Defendants Ridge and Savage based on Plaintiff's claims that Defendants were deliberately indifferent to Plaintiff's serious medical needs by continuing to prescribe medications that caused him to suffer lichen planus, and then failed to treat such skin condition.

Currently before the Court is Defendant Savage's motion for summary judgment[1] on the grounds that Defendant Savage ("Defendant") was not deliberately indifferent to Plaintiff's medical needs under the Eighth Amendment, Defendant is entitled to qualified immunity, and Plaintiff failed to exhaust his administrative remedies prior to filing his lawsuit against

---

[1] Defendant Ridge filed a separate motion for summary judgment, (ECF No. 81), which will be addressed by separate findings and recommendations.

1    Defendant.  (ECF No. 75.)[2]  Following an extension of time, Plaintiff filed an opposition to the

2    motion for summary judgment on September 16, 2022.  (ECF No. 82.)  Defendant filed a reply on

3    September 30, 2022.  (ECF No. 85.)  Defendant Savage's motion for summary judgment is fully

4    briefed.  Local Rule 230(l).  For the reasons set forth below, the Court recommends that

5    Defendant's motion for summary judgment be granted.[3]

6    **II.       Legal Standard**

7           Summary judgment is appropriate when the pleadings, disclosure materials, discovery,

8    and any affidavits provided establish that "there is no genuine dispute as to any material fact and

9    the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is

10   one that may affect the outcome of the case under the applicable law.  *See Anderson v. Liberty*

11   *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a

12   reasonable [trier of fact] could return a verdict for the nonmoving party."  *Id.*

13          The party seeking summary judgment "always bears the initial responsibility of informing

14   the district court of the basis for its motion, and identifying those portions of the pleadings,

15   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

16   which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v.*

17   *Catrett*, 477 U.S. 317, 323 (1986).  The exact nature of this responsibility, however, varies

18   depending on whether the issue on which summary judgment is sought is one in which the

19   movant or the nonmoving party carries the ultimate burden of proof.  *See Soremekun v. Thrifty*

20   *Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  If the movant will have the burden of proof at

21   trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for

22   the moving party."  *Id.* (citing *Celotex*, 477 U.S. at 323).  In contrast, if the nonmoving party will

23   have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an

24   absence of evidence to support the nonmoving party's case."  *Id.*

25   _____

26   [2] Concurrent with the motion, Plaintiff was provided with notice of the requirements for opposing a motion for
summary judgment.  (ECF No. 75-3.); *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d

27   952, 957 (9th Cir. 1988); *Klingele v. Eikenberry*, 849 F.2d 409, 411–12 (9th Cir. 1988).

28   [3] This motion was dropped inadvertently by the Court's CM/ECF reporting/calendaring system resulting in the
prolonged delay in resolution.

1    If the movant satisfies its initial burden, the nonmoving party must go beyond the

2    allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative

3    evidence from which a jury could find in [its] favor." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929

4    (9th Cir. 2009) (emphasis omitted).  "[B]ald assertions or a mere scintilla of evidence" will not

5    suffice in this regard.  *Id.* at 929; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

6    U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its

7    opponent must do more than simply show that there is some metaphysical doubt as to the material

8    facts.") (citation omitted).  "Where the record taken as a whole could not lead a rational trier of

9    fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S.

10   at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

11   In resolving a summary judgment motion, "the court does not make credibility

12   determinations or weigh conflicting evidence."  *Soremekun*, 509 F.3d at 984. Instead, "[t]he

13   evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn

14   in [its] favor."  *Anderson*, 477 U.S. at 255.  Inferences, however, are not drawn out of the air; the

15   nonmoving party must produce a factual predicate from which the inference may reasonably be

16   drawn.  *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985),

17   *aff'd*, 810 F.2d 898 (9th Cir. 1987).

18   In arriving at these findings and recommendations, the Court carefully reviewed and

19   considered all arguments, points and authorities, declarations, exhibits, statements of undisputed

20   facts and responses thereto, if any, objections, and other papers filed by the parties.  Omission of

21   reference to an argument, document, paper, or objection is not to be construed to the effect that

22   this Court did not consider the argument, document, paper, or objection. This Court thoroughly

23   reviewed and considered the evidence it deemed admissible, material, and appropriate.

24   **III.    Discussion**

25   **A.    Evidentiary Objections**

26   Plaintiff asserts an "ongoing objection" to Defendant's evidence, arguing that certain

27   "supposed quotes" by Plaintiff or Defendant are not based on testimony or materials entered into

28   evidence.  (ECF No. 82, p. 2.)  Plaintiff also appears to question the credibility of Defendant's

1    evidence generally, and provides his own arguments and factual allegations in opposition.

2        Plaintiff's evidentiary objections are overruled.  Plaintiff must do more than attack the

3    credibility of Defendant's evidence.  *See National Union Fire. Ins. Co. v. Argonaut Ins. Co.*, 701

4    F.2d 95, 97 (9th Cir. 1983) ("[N]either a desire to cross-examine an affiant nor an unspecified

5    hope of undermining his or her credibility suffices to avert . . . judgment.").  Further, Federal Rule

6    of Civil Procedure 56(c)(1) specifically requires that a party asserting that is genuinely disputed

7    must support the assertion by "citing to particular parts of materials in the record . . . or showing

8    that the materials cited do not establish the absence or presence of a genuine dispute, or that an

9    adverse party cannot produce admissible evidence to support the fact."  Similarly, pursuant to

10   Local Rule 260(b), a party opposing a motion for summary judgment is required to deny those

11   facts that are disputed, "including with each denial a citation to the particular portions of any

12   pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in

13   support of that denial."  To the extent Plaintiff has identified that a fact is in dispute but fails to

14   provide supporting evidence or otherwise demonstrate that the evidence relied upon by Defendant

15   is inadmissible, such fact will be accepted as undisputed.

16       **B.    Undisputed Material Facts ("UMF")**[4]

17       <u>Background Concerning the Parties</u>

18       1.    Plaintiff has been incarcerated in the custody of the California Department of

19   Corrections and Rehabilitation ("CDCR") since 2008, and was housed at Sierra Conservation

20   Center ("SCC") from 2014 to 2017.  (ECF No. 1 ("Compl."), pp. 4, 9; Ex. GG ("Pl.'s Depo.") at

21   24:23–25:3.)

22   ///

23

24   [4] *See* Separate Statement of Undisputed Facts in Support of Defendant Dr. W. Savage's Motion for Summary
     Judgment.  (ECF No. 75-2.)  Plaintiff did not comply with the rules in preparing his opposition, including by failing
25   to reproduce Defendant's Statement of Undisputed Facts and providing "a citation to the particular portions of any
     pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support" of any
26   disputed facts, or providing a statement of disputed facts.  Local Rule 260(b).  As a result, Defendant's Statement of
     Undisputed Facts is accepted except where brought into dispute by Plaintiff's verified complaint, signed under
27   penalty of perjury.  *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an
     opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence).
28   Unless otherwise indicated, disputed and immaterial facts are omitted from this statement and relevant objections are
     overruled.

2.      Defendant has been licensed to practice medicine in California since 1998.  He was employed as a staff physician at SCC from 2006 until 2020 when he retired from medical practice.  (Ex. BB ("Savage Decl."), ¶¶ 2–3.)

3.      As a staff physician at SCC, defendant provided primary medical care to inmates, which included conducting physical examinations, providing necessary treatment, prescribing medication, interpreting test results, and providing educational and preventative information.  (*Id.* ¶ 4.)

Plaintiff's Medical Care from 2014 to 2017

4.      On February 6, 2014, Plaintiff was seen at SCC by L. Schmidt, FNP-C.  It was noted that Plaintiff had been off insulin for four months, as he was trying to lose weight.  Plaintiff now wanted to restart metformin (a medication used to control high blood sugar) and insulin for his type 2 diabetes.  The physical examination showed that Plaintiff had a BMI (Body Mass Index) of 34, which meant that Plaintiff was in the obese category.  It was also noted that Plaintiff had no rashes on his skin at the time.  Nurse Practitioner ("NP") Schmidt ordered new labs and a CMP (comprehensive metabolic panel) for Plaintiff, and ordered that he return to the medical line on February 7, 2014.  (Ex. A, Progress Note; Savage Decl., ¶ 7.)

5.      On February 7, 2014, Plaintiff was seen by NP Schmidt who noted that Plaintiff had restarted Lantus (insulin injections for type 2 diabetes).  NP Schmidt also noted that the metformin prescription was on hold, as the results from the lab work that had been ordered were pending.  (Ex. B, Progress Note; Savage Decl., ¶ 8.)

6.      On February 14, 2014, Plaintiff was seen by NP Schmidt who ordered that Plaintiff restart metformin.  Plaintiff was also to continue receiving Lantus injections.  (Ex. C, Progress Note; Savage Decl., ¶ 9.)

7.      On February 28, 2014, Plaintiff was restarted on metformin 500 mg.  On the same day, NP Schmidt also started Plaintiff on hydrochlorothiazide 25 mg (a diuretic used to treat high blood pressure).  (Ex. D, Medication Reconciliation Record; Savage Decl., ¶ 10; Pl.'s Depo. at 61:21–62:15.)

///

5

1    8.    On March 12, 2014, Defendant saw Plaintiff at the SCC clinic related to Plaintiff's

2    recent transfer to the facility.  The physical examination revealed that Plaintiff had seborrheic

3    dermatitis (a common skin disease that causes an itchy rash and flaky scales also known as

4    dandruff) on his face.  In order to treat the seborrheic dermatitis, Defendant prescribed selenium

5    sulfide 2.5% suspension lotion (a medication used to help control the symptoms of dandruff and

6    seborrheic dermatitis) and clotrimazole 1% cream (an antifungal medicine).  In order to manage

7    and monitor Plaintiff's diabetes, Defendant ordered lab work and an optometry referral.

8    Defendant also ordered that Plaintiff return to the clinic in 3–4 months.  (Ex. E, Progress Note;

9    Ex. F, Physician's Orders; Ex. G, Medication Administration Record; Savage Decl., ¶ 11.)

10   9.    On April 30, 2014, Plaintiff had the blood work done that Defendant had ordered.

11   (Ex. H, Lab Report; Savage Decl., ¶ 12.)

12   10.    On July 1, 2014, Defendant renewed Plaintiff's hydrochlorothiazide prescription

13   for the treatment of Plaintiff's blood pressure.  (Ex. I, Medication Reconciliation Record; Savage

14   Decl., ¶ 13.)

15   11.    When Defendant renewed Plaintiff's hydrochlorothiazide prescription (which had

16   originally been ordered by NP Schmidt), there was no indication that Plaintiff was experiencing

17   any adverse side effects (such as a skin condition) from this blood pressure medication at the

18   time.  Because Plaintiff was diabetic and obese, it was also medically important that his blood

19   pressure be controlled.  (Savage Decl., ¶ 13.)

20   12.    On July 7, 2014, Defendant saw Plaintiff for a follow-up.  Plaintiff's chief

21   complaint was left head pain.  Defendant noted that Plaintiff was experiencing no hypertension

22   but he was still having issues with obesity.  In particular, Plaintiff's BMI had increased to 37.5.

23   Plaintiff did not complain about any skin conditions at the time Defendant saw him.  Defendant

24   ordered lab work and that Plaintiff return to the clinic in 3–4 months.  (Ex. J, Progress Note;

25   Savage Decl., ¶ 14.)

26   13.    On September 12, 2014, Plaintiff had the blood work done that Defendant had

27   ordered.  (Ex. K, Lab Report; Savage Decl., ¶ 15.)

28   ///

14.     On October 30, 2014, Plaintiff was scheduled to see Defendant for a follow-up. However, Plaintiff refused to be seen.  (Ex. L, Progress Note; Savage Decl., ¶ 16.)

15.     On January 9, 2015, Plaintiff had the blood work done that Defendant had ordered. (Ex. M, Lab Report; Savage Decl., ¶ 17.)

16.     On January 15, 2015, Defendant submitted a request for a referral to optometry for Plaintiff to have his annual screening for diabetic retinopathy (an eye condition that can cause vision loss and blindness in people who have diabetes).  (Ex. N, Physician Request for Services; Savage Decl., ¶ 18.)

17.     On February 9, 2015, Defendant saw Plaintiff for a follow-up related to a CDCR 7362 form that Plaintiff had submitted and with regard to Plaintiff's earlier refusal to be seen. During the appointment, Plaintiff indicated that he was "great."  Plaintiff's blood pressure was slightly high (138/86) and his BMI was 36.9.  Plaintiff stated that he had not taken his medication in the morning but indicated that he would do so.  Defendant checked Plaintiff's blood work results and ordered a follow-up in 3–4 months.  (Ex. O, Progress Note; Savage Decl., ¶ 19.)

18.     On March 26, 2015, Defendant saw Plaintiff for a review of Plaintiff's monofilament test (a test to check for nerve damage which may be caused by conditions such as diabetes).  Defendant noted that in his last visit, Plaintiff had asked that his insulin prescription be discontinued.  During this visit, Plaintiff asked for more metformin.  (Ex. P, Progress Note; Savage Decl., ¶ 20.)

19.     On May 22, 2015, Plaintiff had the blood work done that Defendant had ordered. After this, Defendant did not see Plaintiff in 2015 or later in 2016.  (Ex. Q, Lab Report; Savage Decl., ¶¶ 21, 23; Pl.'s Depo at 85:25–86:16.)

20.     On June 22, 2015, Plaintiff's hydrochlorothiazide 25 mg prescription was renewed by Defendant Dr. N. Ridge.  Plaintiff's metformin prescription was also increased from 500 mg to 1,000 mg.  (Ex. R, Medication Reconciliation Record; Savage Decl., ¶ 22.)

21.     On December 14, 2016, Plaintiff submitted a CDCR 7362 form requesting a refill of his selenium sulfide prescription.  A refill was ordered for Plaintiff on December 16, 2016. (Ex. S, Health Care Services Request; Savage Decl., ¶ 24.)

7

22.   On January 18, 2017, Plaintiff had a dermatology consultation with Dr. R. Hrabko about Plaintiff's skin conditions.  During the appointment, Plaintiff indicated that the thing that was bothering him the most was the rash on his face.  He stated that he had been using selenium sulfide shampoo which seemed to help but had not cleared the condition.  Plaintiff also indicated that he recently discontinued his metformin and hydrochlorothiazide prescriptions which he thought improved his lichen planus a bit.  The physical examination revealed some redness in the paranasal region but the beard area was hard to evaluate.  Multiple red papules (raised spots on the skin) were visible on the lower extremities.  Dr. Hrabko's impression was that Plaintiff had seborrheic dermatitis on his face and lichen planus.  (Ex. T, Dermatology Report; Savage Decl., ¶ 25.)

23.   Dr. Hrabko ordered that Plaintiff start using ketoconazole 2% shampoo (containing an antifungal medicine) in the beard area and discontinue using the selenium sulfide shampoo.  Dr. Hrabko noted that if any lesions appeared on the nose (which he did not actually see at that time), then Plaintiff might also need ketoconazole cream.  Dr. Hrabko also prescribed Metronidazole 500 mg for 60 days, as there had been a report that the medications clears significant number of lichen planus patients.  (*Id.*)

24.   In his report, Dr. Hrabko noted that the lichen planus may or may not be drug-induced.  (*Id.*)

25.   On February 1, 2017, Plaintiff had a follow-up with Defendant Ridge.  During the appointment, Plaintiff indicated that he had started the ketoconazole shampoo in his beard that had been recommended by the dermatologist.  However, Plaintiff stated that he did better with selenium sulfide in the past with regard to pain from the rash.  Defendant Ridge noted that Plaintiff's blood sugar levels had been elevated in the past 1–2 weeks, likely contributed to by the discontinuation of metformin which was used to treat his diabetes.  Defendant Ridge discussed this concern with Plaintiff, who stated that he would do better at dieting and exercising to lose weight.  Defendant Ridge noted that this was a key component in the treatment of diabetes, especially in patients who are obese like Plaintiff.  Defendant Ridge also noted that Plaintiff's blood pressure had been slightly elevated, likely due to the discontinuation of his

1    hydrochlorothiazide prescription.  (Ex. U, Progress Note; Savage Decl., ¶ 26.)

2          26.    On the same day, Plaintiff received patient education materials about seborrheic

3    dermatitis and lichen planus.  (Ex. V, Discharge Instructions; Savage Decl., ¶ 27.)

4          27.    On February 24, 2017, Plaintiff had a dermatology follow-up with Dr. Hrabko.

5    The physical examination revealed that Plaintiff's face was relatively clear.  Because there were

6    some lesions on Plaintiff's right leg, Dr. Hrabko also prescribed clobetasol ointment 0.05% (a

7    corticosteroid used to treat various skin conditions) for Plaintiff to use q.h.s. (i.e. every night at

8    bedtime).  (Ex. W, Dermatology Report; Savage Decl. ¶ 28.)

9          28.    In his report, Dr. Hrabko noted that it was not clear whether or not the lichen

10   planus was secondary to metformin and/or hydrochlorothiazide.  (*Id.*)

11         29.    On or about April 6, 2017, Plaintiff submitted a CDCR 602 inmate appeal (SCC

12   HC 17012631) in which he stated that a dermatologist had recommended something stronger for

13   his lichen planus infection but a SCC doctor had discontinued it due to Plaintiff's prior lawsuits

14   against SCC medical staff.  Plaintiff requested that he be given the medication that had been

15   recommended by the dermatologist.  Plaintiff also requested that photos be taken of his condition.

16   Further, Plaintiff requested to be taken off the caseload of Defendant Ridge due to a conflict of

17   interest.  Plaintiff also requested that he not be retaliated against.  (Ex. X, Inmate 602 Appeal

18   Documents; Savage Decl., ¶ 29; Ex. CC ("Abernathy Decl."), ¶ 9.)

19         30.    Defendant was assigned to interview Plaintiff about the matters raised in Plaintiff's

20   inmate appeal at the first level.  (Savage Decl., ¶ 30; Pl.'s Depo. at 89:13–90:22.)

21         31.    On April 24, 2017, Defendant attempted to interview Plaintiff about his inmate

22   appeal.  However, Plaintiff indicated that he did not want to do an interview.  (Savage Decl., ¶ 31;

23   Pl.'s Depo. at 89:13–90:22.)

24         32.    On May 10, 2017, Plaintiff's inmate appeal was partially granted at the first level,

25   as Plaintiff had already received the prescription recommended by the dermatologist.  (Savage

26   Decl., ¶ 32; Abernathy Decl., ¶ 11.)

27         33.    On May 19, 2017, Plaintiff had another dermatology consultation with Dr. Hrabko.

28   During the appointment, Plaintiff indicated that the 2% ketoconazole shampoo that Dr. Hrabko

had prescribed helped but was no better than Head and Shoulders shampoo and the selenium sulfide shampoo.  The physical examination revealed that Plaintiff had red macules (flat and discolored areas of the skin) and papules (raised spots on the skin) on his nose.  Dr. Hrabko prescribed 2% ketoconazole cream to be used b.i.d. (i.e. twice a day) for the face indefinitely for one year.  Dr. Hrabko noted that the lichen planus, which was probably secondary to either the hydrochlorothiazide or metformin, had not cleared.  (Ex. Y, Dermatology Report; Savage Decl., ¶ 33.)

34.     On July 10, 2017, Plaintiff was scheduled for an appointment with a primary care physician.  However, Plaintiff refused to be seen, stating that he was stable and did not need anything.  (Ex. Z, Progress Note; Savage Decl., ¶ 34.)

Other Undisputed Facts

35.     Defendant never intended that Plaintiff suffer any undue or unnecessary pain with respect to his skin conditions, or for any other reason.  (Savage Decl., ¶ 35.)

36.     Defendant's intentions throughout were to ensure that Plaintiff promptly received treatment that was medically necessary and appropriate for his condition at the time of treatment. (*Id.*)

## C.     Parties' Positions

Defendant Savage contends that even when viewed in the light most favorable to Plaintiff, the evidence in this case demonstrates that Defendant did not violate Plaintiff's constitutional rights under the Eighth Amendment.  Defendant was not involved in prescribing metformin to Plaintiff, but even if he had been, such a prescription was medically appropriate because the medication was necessary to treat Plaintiff's diabetes.  Plaintiff was the one who had requested the medication after he was unsuccessful with dieting and losing weight.  Defendant was also not involved in prescribing hydrochlorothiazide to Plaintiff when he arrived at SCC, and while Defendant subsequently renewed the prescription, this was medically appropriate because Plaintiff was diabetic and obese, and it was important that his blood pressure was controlled. Plaintiff was not experiencing any adverse side effects from this medication at the time of the renewal.  Moreover, it was medically appropriate for Defendant to prescribe selenium sulfide and

clotrimazole to treat the seborrheic dermatitis on Plaintiff's face.  Defendant is also entitled to qualified immunity because he did not violate Plaintiff's constitutional rights nor would a reasonable medical professional in Defendant's position have any reason to believe his actions were unlawful.  Further, Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit against Defendant.

In opposition, Plaintiff argues that Defendant has failed to present evidence that he was not deliberately indifferent to Plaintiff's serious medical need.  Plaintiff stands by his allegations in the complaint and throughout this case that Defendant failed to look up the most common medications that can lead to lichen planus or refer to Plaintiff's drug chart, and refused to listen to Plaintiff's repeated requests to be referred to a skin specialist.  All of this demonstrates his deliberate indifference.  Plaintiff further argues that Defendant should have raised the issues of qualified immunity and failure to exhaust at the earliest possible opportunity, rather than this late in the lawsuit, and that both qualified immunity and failure to exhaust are not appropriate grounds for summary judgment in this action.

In reply, Defendant argues that Plaintiff cannot create a genuine issue of material fact simply by making assertions in his opposition and citing to various deliberate indifference cases in support.  Plaintiff has not submitted a signed declaration, a deposition transcript, or any verified responses to interrogatories disputing the evidence submitted in support of Defendant's motion for summary judgment, nor does he cite to any piece of evidence in the record demonstrating that Defendant was deliberately indifferent to Plaintiff's medical needs.  Apart from general deliberate indifference case law, Plaintiff has not pointed to any specific cases where a doctor was found liable in a similar situation as the one alleged in this lawsuit, and Defendant is entitled to qualified immunity.  Finally, the evidence clearly demonstrates that Plaintiff failed to exhaust his administrative remedies against Defendant, and the Court's prior ruling on the motion to dismiss filed by Defendant Ridge and former Defendant Miranda did not consider whether Plaintiff exhausted his administrative remedies against Defendant Savage.

///

///

11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**D.     Analysis**

1.     <u>Defendant Waived the Affirmative Defense of Failure to Exhaust</u>

While Defendant asserted the affirmative defense of failure to exhaust remedies in his answer, (ECF No. 28, p. 6), Defendant did not file a motion for summary judgment raising the issue by the December 2, 2021 deadline set by the Court's discovery and scheduling order, (ECF No. 68).  *See Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (the affirmative defense of non-exhaustion must be raised and proven in a motion for summary judgment).  Defendant did not seek an extension of that deadline and has not provided an explanation for his failure to do so.  Rather, Defendant included the non-exhaustion defense together with the instant motion for summary judgment on the merits, despite the Court's discovery and scheduling order specifying a "deadline for filing all dispositive motions (other than a motion for summary judgment for failure to exhaust)."  (ECF No. 68, p. 3.)

Accordingly, the Court finds no evidence in the record that Defendant attempted to resolve this issue "as early as feasible," *see Albino*, 747 F.3d at 1168, and concludes that Defendant waived the affirmative defense of failure to exhaust.  *See Lira v. Herrera*, 427 F.3d 1164, 1171 (9th Cir. 2005) (failure to exhaust administrative remedies is an affirmative defense that can be waived).  The Court therefore does not address Defendant's arguments with respect to failure to exhaust.

2.     <u>Defendant Was Not Deliberately Indifferent to Plaintiff's Medical Needs</u>

Based on the evidence in the record, Plaintiff has failed to show that Defendant was deliberately indifferent to Plaintiff's medical needs.  The undisputed facts show that Defendant treated Plaintiff from approximately March 2014 to May 2015.  UMF 8–19.  During that time, Defendant prescribed selenium sulfide lotion and clotrimazole cream to treat Plaintiff's seborrheic dermatitis.  UMF 8.  While Defendant renewed Plaintiffs prescription for hydrochlorothiazide to treat Plaintiff's blood pressure, there was no indication that Plaintiff was experiencing any adverse side effects (such as a skin condition) from this medication.  UMF 11.  Plaintiff did not complain of other skin conditions during any other visits with Defendant during this time.  UMF 12, 17, 18.  Plaintiff also requested more metformin when his insulin was

1    discontinued.  UMF 18.

2            Plaintiff argues throughout his opposition that he repeatedly asked Defendant to refer

3    Plaintiff to a skin specialist after suffering for years, both before and while in the care of

4    Defendant, with skin conditions that caused severe pain and suffering.  Plaintiff further contends

5    that Defendant then failed to provide proper medical care to Plaintiff, because he denied

6    Plaintiff's requests for a referral and continued to prescribe and re-prescribe metformin and

7    hydrochlorothiazide, the "most common offender medications" that had initially caused the lichen

8    planus.[5]  (ECF No. 82, p. 4.)  However, Plaintiff provides no evidence, either in the form of

9    evidence from his medical records or a declaration signed under penalty of perjury, to support his

10   allegations that Plaintiff suffered from a severe skin condition while he was under the care of

11   Defendant, that Defendant was aware of the severe skin condition, and that Defendant refused to

12   provide proper medical care.  This is not sufficient to create a genuine dispute of material fact.

13   *See Rivera v. AMTRAK*, 331 F.3d 1074, 1078 (9th Cir. 2003) ("Conclusory allegations

14   unsupported by factual data cannot defeat summary judgment.").

15                   3.      Qualified Immunity

16           Defendant also asserts that the Court should grant summary judgment on the basis of

17   qualified immunity.  However, the Court finds that this argument need not be reached, based

18   upon the above determination regarding the undisputed facts in this case.

19   **IV.    Conclusion and Recommendation**

20           For the reasons explained above, the Court finds that Defendant Savage is entitled to

21   summary judgment on Plaintiff's claims that Defendant Savage was deliberately indifferent to

22   Plaintiff's serious medical needs by continuing to prescribe medications that caused him to suffer

23   lichen planus, and then failed to treat such skin condition.

24   ///

25   _____

26   [5] Even assuming that Plaintiff had presented evidence to support his contentions, Plaintiff has not shown that he
     qualifies as an expert witness in order to be able to opine on the appropriateness of the medical care he received.  *See*
27   Fed. R. Evd. 702.  As he is a lay witness, the only admissible evidence Plaintiff can provide on his own is limited to
     opinions that are rationally based on his perception; that are helpful to clearly understanding his testimony or to
     determining a fact in issue; and are not based on scientific, technical, or other specialized knowledge within the scope
28   of Rule 702 such as medical opinions.  *See* Fed. R. Evd. 701.

                                                        13

1    Accordingly, IT IS HEREBY RECOMMENDED that Defendant Savage's motion for

2 summary judgment, (ECF No. 75), be GRANTED.

3    These Findings and Recommendations will be submitted to the United States District

4 Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within

5 **fourteen (14) days** after being served with these Findings and Recommendations, the parties may

6 file written objections with the court.  The document should be captioned "Objections to

7 Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file

8 objections within the specified time may result in the waiver of the "right to challenge the

9 magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir.

10 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

11

12 IT IS SO ORDERED.

13    Dated:   **March 18, 2024**          /s/ *Barbara A. McAuliffe*

14                                     UNITED STATES MAGISTRATE JUDGE